UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: 10-cv-2198 (MJD/JJK)

| | |
|---|---|
| Mary Miller,<br><br>      Plaintiff,<br>v.<br><br>Rubin & Rothman, LLC.,<br><br>      Defendant. | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY** |

## INTRODUCTION

This Memorandum is submitted in Opposition to Defendant's Motion to Compel Discovery. For the reasons described below in detail, Defendant's Motion seeking a burdensome universe of irrelevant, cumulative and confidential documents should be denied in its entirety.

## FACTS PERTINENT TO THE MOTION

### *Plaintiff's FCRA Claims Against Rubin & Rothman, LLC*

Plaintiff commenced this action against Defendant on May 28, 2010 alleging violations of the Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. § 1681b, for illegally obtaining and using her Experian credit report on multiple occasions in 2008. *See Docket No. 1*. Defendant did not have a permissible purpose to obtain or use Plaintiff's credit report because she was not the debtor in question but instead just an

innocent person with the same first and last name as someone else. *Id*. Defendant filed its Answer on July 23, 2010 denying any wrongdoing. *See Docket No. 2*.

### *Brief Overview of Defendant's Attempts at Obtaining Discovery*

The Court held a pretrial conference on October 4, 2010 and entered a Scheduling Order dated October 5, 2010 setting the discovery and non-dispositive motion deadline for April 1, 2011. *See Docket No. 5*.

On October 28, 2010, shortly after the Scheduling Order was issued, Plaintiff served Defendant with written discovery and her Rule 26(a)(1) Initial Disclosures. *Roy Aff. ¶2*. Therein, Plaintiff identified the following parties as likely to have discoverable information: Capital One; Gurstel, Staloch, & Chargo, P.A.; and Experian Information Solutions.[1]

On November 28, 2010, the Court entered a Protective Order pursuant to the parties' stipulation filed on November 22, 2010 governing the confidential documents anticipated by the parties to be exchanged during the course of discovery. *See Docket Nos. 7-8*.

On February 22, 2011, just short of one month before the close of discovery in this case, Defendant served Plaintiff with written discovery.[2] Plaintiff answered Defendant's written discovery on March 22, 2011. *Roy Aff. ¶3*.

---

[1] Defendant never subpoenaed any of these witnesses. *Roy Aff. ¶2*.

[2] Defendant served more document requests and requests for admissions than permitted by the Scheduling Order. *Roy Aff. ¶4*.

2

Then, on March 10, 2011, Defendant served a Notice of Deposition of Plaintiff to take place on March 30, 2011, just before the discovery cutoff of April 1, 2011. Plaintiff's counsel canceled depositions that were set to be taken in another case that day so that Defendant could take Plaintiff's deposition before the discovery deadline. *Id.* at ¶5.

### *The Alleged "Meet and Confer"*

**Wednesday, March 30, 2011**

Counsel for the parties did not "meet and confer" on March 30, 2011 for Rule 37 purposes to discuss any concerns Defendant had regarding Plaintiff's allegedly deficient discovery responses. Rather, the parties happened to be at the same place at the same time for Plaintiff's deposition, which was taken on March 30, 2011, beginning at 10:00 a.m. and ending at approximately 2:00 p.m. at the offices of Defendant's counsel. *Roy Aff.* ¶6.

At the conclusion of her deposition, Defendant's counsel indicated his belief that certain documents needed to be produced by Plaintiff and loosely identified what he considered must be produced. Counsel for both parties briefly discussed the issue and various documents; however, at the time, Plaintiff's counsel did not have the benefit of Plaintiff's file or any opportunity to review Defendant's discovery requests and consider whether Plaintiff had fallen short on her responses that were served on March 22, 2011. *Id.* at ¶7. Based on the brief conversation following Plaintiff's deposition, counsel indicated she would make a good faith effort to produce supplemental documents, but

that certain documents, aside from their complete irrelevancy to the case at hand, could not be produced anyway as they were confidential and/or covered by a protective order.[3] Plaintiff's counsel returned to her office at approximately 3:00 p.m., and completed a brief due that day in another matter. *Id. at ¶8.*

**Thursday, March 31, 2011**

The next day, March 30, 2011, Plaintiff's counsel appeared at a Settlement Conference before the Honorable Judge Noel beginning at 9:00 a.m. in Minneapolis. The Conference did not end until 11:30 a.m. and counsel returned to her office thereafter at approximately 12:15 p.m. *Roy Aff. ¶10.*

At 12:39 p.m., Plaintiff's counsel sent Defendant's counsel an email requesting clarification in order to follow up with his requests for supplementation. Specifically, counsel asked for a list of the documents he claimed Defendant was entitled to and for the corresponding discovery request, as she had similarly done in raising Plaintiff's concerns following Defendant's deposition earlier that month, so that she could review the list and cross check it against both the discovery requests and the constraints of any protective orders in the other cases. Counsel indicated that it would be unlikely for her to be able to immediately respond to Defendant's demands.[4] *Roy Aff. ¶11.*

---

[3] Plaintiff's counsel does not recall indicating there were responsive documents being withheld on the basis of privilege. Counsel indicated certain documents were "confidential" and could not be disclosed. *Roy Aff. ¶9.*

[4] Plaintiff raised specific concerns regarding Defendant's deficient discovery responses following Defendant's deposition earlier that month by sending a detailed letter. *See Doc. No. 12.*

At 1:14 p.m., Defense counsel responded with an <u>extensive</u> list of requests, the vast majority if not every single one, are completely irrelevant to the claims and defenses in this case:

> 1. Copies of Plaintiff's credit reports (including the Trimerge credit report received by her bank)
> 2. Copies of written correspondence with Capital One
> 3. Copies of written correspondence with Experian
> 4. Copies of written correspondence with Trans Union
> 5. Copies of written correspondence with Equifax
> 6. Copies of any written correspondence with Gurstel (Other than the letters dated 5/1 and 6/4)
> 7. Copies of written correspondence with CSC Credit
> 8. Copies of written correspondence with LexisNexis
> 9. Copies of Plaintiff's discovery responses to Experian's written discovery requests in the lawsuit against the CRA's
> 10. Copy of transcript of Plaintiff's deposition in the lawsuit against the CRA's
> 11. Copies of Plaintiff's discovery responses to Gurstel's written discovery requests in the lawsuit against Gurstel
> 12. Copy of transcript of Plaintiff's deposition in the lawsuit against Gurstel
> 13. Copy of the settlement agreement in the lawsuit against the CRA's (which I believe that you said you would not produce)

*Id.* at ¶12. However, Defendant failed to identify to which discovery request each of the items corresponded as requested to expedite Defendant's demand to supplement first conveyed to Plaintiff less than 24 hours earlier. Plaintiff again asked for clarification as to what document requests the above corresponded to – Defendant responded at 2:21 p.m. and listed the document requests he believed needed supplementation. *Id. at ¶13*. Plaintiff's counsel is in the process of reviewing Defendant's discovery requests

compared to Plaintiff's responses and putting together a substantive response to Defendant's demands for supplementation. *Id. at ¶14*.

## ARGUMENT

### I. THE SCOPE OF PERMISSIBLE DISCOVERY SHOULD BE REASONABLY TIED TO THE LIMITED CLAIMS AND DEFENSES PRESENTED BY THIS CASE.

Plaintiff's case is simply premised upon the fact that Defendant accessed her credit report on three occasions and used it without a permissible purpose in violation of 15 U.S.C. §1681b. Since there is no dispute as to whether Defendant accessed her report on those three occasions, the case really boils down to two questions:

**1) Did Defendant have a permissible purpose each time it pulled and/or used Plaintiff's credit report?**

**2) If they did not have a permissible purpose, what damage did Defendant's illegal pull and/or use cause Plaintiff, if any?**

These are the legal questions posed by this case. Plaintiff is at a loss in attempting to understand what possible relevancy any of the documents sought by Defendant, including deposition transcripts and answers to written discovery in other cases, could have in this particular case. Defendant appears to be embarking on an inappropriate and extremely overly burdensome fishing expedition.

For example, Defendant's Doc. Request No. 9 sought "All documents reflecting each and every time you have been allegedly harmed by any debt collector or creditor in the past five years." Plaintiff objected on the basis that the request was "harassing, burdensome and not reasonably calculated to the production of admissible evidence."

6

Whether Plaintiff has or has not been "harmed" by any other debt collector or creditor in the past five years has nothing to do with whether or not Defendant violated the FCRA and/or the damaged caused by Defendant's specific conduct alleged in this case.  In any event, to the extent that Defendant seeks an answer as to any time Plaintiff has been harmed, Plaintiff disclosed in her interrogatory responses that she had previously filed two lawsuits against a debt collection law firm for FDCPA violations and multiple credit reporting agencies for putting inaccurate information in her credit reports.  Defendant has a copy of those Complaints and is aware of the allegations and defenses raised in those cases.

    Defendant's motion now seeks an Order compelling Plaintiff to produce every single document in existence that has been exchanged by Plaintiff, her counsel, and the defendants and their counsel in the other cases – written correspondence with Experian, CSC, LexisNexis, and Gurstel, transcripts, answers to discovery, etc.  This would be <u>extremely</u> burdensome and costly, and would produce absolutely nothing relevant to the claims and defenses in this case.  Defendant's recent demand to supplement on the basis that such documents were supposedly requested in discovery but not produced,[5] was especially unreasonable given the completely unworkable time frame of approximately 24 hours.  At least 1,090 documents – not including pleadings, briefs, deposition

---

[5] Plaintiff asserts that many of the documents and items listed in Defendant's motion fall outside the document requests themselves, or at least Plaintiff's and her attorney's understanding of the requests.  The requests are overly broad, non-specific and subjective, which severely affects Plaintiff's opportunity to object should the Court accept Defendant's argument that many of the documents requested in its motion are encompassed by the written discovery.

transcripts and correspondence between counsel – were produced by the parties in *Miller v. Experian Information Solutions, Inc.,et al,* 09-2728 PJS/RLE.  Moreover, a vast majority of the 1,000+ documents were marked as "confidential" pursuant to the Protective Order in place. *Roy Aff. ¶15.*  Plaintiff cannot disclose them for Defendant's unfettered and unknown purposes without violating the terms of the Order. *See Miller v. Experian Information Solutions, Inc.et al, Docket No. 35, Protective Order dated March 1, 2010.*

In addition, Defendant's motion ironically demands additional copies of the very document that triggered Plaintiff to file her Complaint – her credit report.  Defendant's motion now seeks "[c]opies of all Plaintiff's credit reports, including the Trimerge credit report received by her bank in 2009,"[6] even though Defendant is already in possession of three copies of Plaintiff's credit report that it accessed on three separate occasions and kept in its records.  In addition, Plaintiff provided Defendant with a copy of her November 3, 2009 Experian credit report, showing the three illegal pulls, as part of her Rule 26(a)(1) Initial Disclosures served back in October 2010.  How many more copies of Plaintiff's private credit report does Defendant need?  Defendant's demand for continued access to her credit reports is invasive, harassing, and in no way reasonably calculated to lead to the discovery of admissible evidence.

---

[6] Defendant's Doc. Request No. 12 sought "[a]ny consumer reporting agency reports that reference, regard, or relate to the matters asserted in your pleadings."  Plaintiff has complied with this request – Defendant is in possession of the three credit reports it obtained on its own that are the subject matter of this case, in addition to the one Plaintiff produced during the course of discovery dated November 3, 2009.

## II.  SOME OF THE DOCUMENTS SOUGHT IN DEFENDANT'S MOTION ARE AVAILABLE AS PUBLIC RECORDS.

In her interrogatory answers, Plaintiff disclosed the existence of the two lawsuits filed by Plaintiff in federal court and directed Defendant to Pacer, where much of the documents now sought in Defendant's motion are publicly available and easily accessible.  The following are just two of many documents available via Pacer should Defendant seek to review them, notwithstanding their complete irrelevance to the case at hand:

- All pleadings in the two federal lawsuits;
- Dispositive motions and their supporting documents;
- Correspondence Plaintiff received from Gurstel; and
- Deposition Transcript of Mary Miller dated August 31, 2010 taken by Gurstel.

There is nothing preventing Defendant from viewing these documents, despite Plaintiff's objection that the documents have no bearing on the claims and defenses in this case.

## III.  DEFENDANT'S MOTION MISSTATES THE ISSUES IN THIS CASE.

Defendant is either confused or is purposely misstating the issues in this case as its Motion refers to "the Account at issue in this matter." *See Doc. No. 16 at p. 6.*  There is no such account at issue.  Plaintiff's claims are not premised upon a disputed account, judgment, or tradeline, but rather the three illegal pulls of her credit report by an entity that did not have permission or authority to access or use her information for any reason – period.

The pulls listed in her credit report dated November 3, 2009 complained of by Plaintiff are not specific to any account. In any event, the bottom line is that Defendant did not have permission or authority to look at her report or use its contents for any reason, regardless of which account or judgment Defendant was seeking information. She did not have any account with Defendant or its client, Capital One. Plaintiff is not making a claim against Defendant for furnishing inaccurate information or failing to investigate a dispute under 15 U.S.C. § 1681s-2(b).[7] Her claims are based on violations of 15 U.S.C. § 1681b which dictates under what circumstances a consumer's credit report may be obtained and/or used. The fact that discovery later revealed that Defendant was actually trying to collect two Capital One accounts in the name of some other "Mary Miller," rather than one, in no way reshapes the scope of reasonable or permissible discovery in this case because the two issues stated above are exactly the same. Plaintiff was not the debtor on either account. Accordingly, whether one pull was related to one

---

[7] Section 1681s-2 states, in relevant part:

(a) Duty of Furnishers of Information to Provide Accurate Information
    (1) Prohibition
        (A) *Reporting information with actual knowledge of errors.* A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
        (B) *Reporting information after notice and confirmation of errors.* A person shall not furnish information relating to a consumer to any consumer reporting agency if
            (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate;
            ii) the information is, in fact, inaccurate.

account, while two pulls were related to the second account is irrelevant, and in any event, not a disputed issue necessitating more documents through discovery.

### IV. DEFENDANT IS NOT ENTITLED TO CONFIDENTIAL SETTLEMENT DOCUMENTS.

Defendant makes the absurd argument Plaintiff is seeking the "same damages in all three lawsuits," and therefore it is entitled to copies of any all confidential agreements that may exist with defendants in a previously resolved litigation. Again, Defendant is either confused or is purposely misstating the issues. Defendant's conduct in illegally obtaining and using Plaintiff's credit report occurred separate and apart from any of the defendants' conduct in the other cases, causing damage to Plaintiff's credit and emotional distress.

Plaintiff did not seek damages for Defendant's conduct in the other cases, but only sought/seeks damages in connection with the defendants' specific, separate conduct. To be clear, the defendants in the other FCRA case placed inaccurate information on her credit report that resulted in an inability to refinance her mortgage and emotional distress. In the FDCPA case, the defendant law firm continued to pursue Plaintiff for payment on a judgment that did not belong to her, by way of collection letters and post judgment discovery, causing emotional distress. While Plaintiff has made a claim for emotional distress in all three cases, it is not and cannot be the "same damages" but simply the same type of damages.

Whether or not Plaintiff received any financial compensation in the resolved case in no way effects Defendant's exposure for damages in this case should it be found that

Defendant violated 15 U.S.C. § 1681b. Defendant has its own duties under the FCRA with provisions for damages based on their conduct. Accordingly, Defendant is not entitled to any confidential settlement documents and its motion should be denied.

V.     **DEFENDANT IS NOT ENTITLED TO AN AWARD OF FEES AND COSTS.**

Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion to compel discovery is granted, the Court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay to the movant's reasonable expenses incurred in making the motion, including attorney's fees. However, the Court <u>must</u> not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

> **a. Defendant did not conduct the required a good faith effort to obtain the requested discovery without court action.**

As detailed above, Defendant's conduct with regard to discovery in general and specifically with regard to the issues presented in its motion contradict any notion that it made a good faith or genuine effort in accordance with the local and federal rules. Defendant's perfunctory, minimal efforts at the close of Plaintiff's deposition the day before the close of discovery can hardly be the basis for sanctions. Defendant failed to act diligently in conducting discovery, served its written discovery at a late stage in the litigation, chose to take Plaintiff's deposition two days before the discovery cutoff, and

did not raise any issues with Plaintiff's responses until after her deposition. This left the parties with little to no opportunity to engage in any meaningful discussions about discovery, and essentially backed Plaintiff's counsel into a corner on the eve of the discovery cutoff. Defendant's demands on the eve of the discovery deadline were unreasonable and physically impossible to fulfill as outlined above. Plaintiff's counsel had 24 hours or less to supplement before Defendant filed its motion. This certainly is not the "good faith" the Rules envisioned litigating parties to practice.

### b. Plaintiff's alleged failure to respond was substantially justified.

Plaintiff and her counsel clearly did not understand Defendant's overly broad and generic discovery requests sought an entire universe of more than 1,000 pages of unrelated documents exchanged in previous litigation. Plaintiff timely answered Defendant's written discovery and provided documents. Once Defendant raised issues with regard to Plaintiff's discovery responses, her counsel responded and agreed to work on supplementation if necessary, but simply requested clarification and time, the latter of which was not granted by Defendant.

### c. Other circumstances exist that would make an award of expenses unjust.

Plaintiff simply has not had the opportunity to examine whether or not her discovery responses have been insufficient based on Defendant's eleventh hour demands, and some of the documents sought by Defendant cannot be disclosed pursuant to the restraints imposed by the Protective Order and confidentiality agreements that exist in the

resolved matter. Accordingly, there are circumstances that would make an award of expenses unjust.

## **CONCLUSION**

For the aforementioned reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

Dated this 8th day of April, 2011.

> By: s/ Trista M. Roy
> Trista M. Roy, Esq.
> Attorney I.D. #: 0387737
> Thomas J. Lyons, Esq.
> Attorney I.D. #:  65699
> 367 Commerce Court
> Vadnais Heights, Minnesota 55127
> Telephone: (651) 770-9707
> Facsimile: (651) 704-0907
> tristacjc@aol.com
> tlyons@lyonslawfirm.com
>
> *Attorneys for Plaintiff*